JOHNSON v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads: NEGLIGENCE.** Plaintiff was driving, northwesterly, upon a public road, and stopped in a ravine about seventy-six steps from a railroad crossing, whence he could see the track to the east, looked and listened for a train, but neither seeing nor hearing one, he drove into a cut in an embankment which obstructed his view of the track, and, while passing through the cut, the brake of the wagon making a noise and frightening one of his mules, he looked back to see what was the matter with the brake. While in this position, and about one and one-half rods from the crossing, a train from the east came in sight of the mules and alarmed them, drawing plaintiff's attention to the train, when the mules, grown unmanageable, ran upon the crossing, and a collision occurred. The statutory duty of ringing a bell or sounding a whistle at and near this crossing had been neglected by the railroad company. In an action by the plaintiff against the company for the damages sustained by the collision; *Held,* that the trial court properly refused to direct a finding for the defendant.

2. ——— : ———. In an action for damages for injuries alleged by the petition to have been occasioned by the negligence of a railroad company in failing to ring a bell or sound a whistle, as required by

section 806, Revised Statutes 1879, there was no evidence that the bell was rung or the whistle sounded, and all the testimony on the subject was that neither had been done. *Held*, that an instruction assuming that the negligence charged had been established, would have been justifiable, and that, therefore, an exception to an instruction based upon the hypothesis of negligence, not limited to the failure to ring a bell or sound a whistle, would be disregarded.

3. ——: ——. An instruction that it was the duty of plaintiff when approaching the railroad crossing to stop, look and listen for an approaching train, and that if he did not do so in time to prevent the collision, then the jury must find for defendant, was *held* to be objectionable in not requiring the jury to find as a further condition that plaintiff, by stopping, looking and listening, could have discovered the train in time to have avoided the collision.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Shanklin, Low & McDougal* for appellant.

*Ramey & Brown* and *Bennett Pike* for respondent.

NORTON, J —This suit was instituted by plaintiff to recover damages for injuries to his person and property occurring at the crossing of a public highway, and alleged to have been occasioned by the negligence of defendant in failing to ring its bell or sound its whistle as required by section 806, Revised Statutes 1879, whereby the locomotive engine struck and killed one mule in a team and wagon being driven by plaintiff, and inflicting upon plaintiff injuries in his spine, back and bowels, rendering him a cripple for life. Judgment for the sum of $5,150 as damages is prayed for. The answer of defendant, after admitting that it was a corporation, is a general denial. Upon the trial of the cause plaintiff had judgment for $2,650, from which defendant has appealed, and assigns for error the action of the court in giving and refusing instructions.

The instructions given on behalf of plaintiff, are as follows:

1.    That if the jury find from the evidence that plaintiff sustained injury to his mule and wagon, and to his person, by reason of the carelessness, negligence or mismanagement of the agents or employes of defendant while running or managing an engine and train of cars attached, at the crossing of the public traveled road mentioned in the petition, at or about the time alleged, the jury will find for the plaintiff, and assess his damages at such sum as they may find from the evidence he has sustained by the injury complained of, not to exceed the amount stated in the petition, provided the jury may further find from the evidence that plaintiff was guilty of no negligence directly contributing to such injury.

4.    If the jury find for the plaintiff as to the injury to his person, they should, in estimating the amount of damages, take into consideration the age and situation of the plaintiff, his bodily suffering and mental anguish resulting from the injury received; the loss of time and injury to his health, if any, and whether the said injuries are temporary or permanent in their character.

Defendant asked the following instructions:

1.    The court instructs the jury to find for the defendant.

2.    The jury are instructed that it was the duty of plaintiff, when approaching the crossing at which he was injured, to stop and look and listen for an approaching train, and if he did not stop and look and listen in time to prevent the collision, the jury must find for defendant.

3.    If the jury believe from the evidence that when plaintiff came in view of the railroad track he was looking away from the track, and that he did not look at the track until his attention was attracted to the train by the action of his team, and too late to prevent the accident, the finding must be for the defendant.

4.    If the plaintiff's view of the railroad track in the

direction from which the train was approaching was obstructed, and the wind rendered it more than ordinarily difficult to hear the train, the plaintiff was bound to use greater care than would have been required if the view had been unobstructed and the wind favorable for hearing the train, and should, if necessary, have gotten down from his wagon and gone in advance of his team until he could see that the track was clear before going upon the track, and not to observe such precaution was negligence, and will prevent his recovery in this case.

The court refused all the foregoing instructions so asked by defendant, to which action of the court the defendant excepted.

The court then modified instructions numbered two and four, asked by defendant, so as to read as follows:

2. That it was the duty of plaintiff, when approaching the crossing at which he was injured, to look and listen for an approaching train, and if he did not look and listen in time to prevent the collision, the jury must find for the defendant.

4. If the plaintiff's view of the railroad track in the direction from which the train was approaching was obstructed, and the wind rendered it more than ordinarily difficult to hear the train, the plaintiff was bound to use greater care than would have been required if the view had been unobstructed and the wind favorable for hearing the train, and should, if necessary, have gotten down from his wagon and gone in advance of his team until he could see that the track was clear before going upon the track, and not to observe such precaution as under all the circumstances in the case was necessary and proper, was negligence, and will prevent his recovery in this case.

It is insisted that the first instruction asked by defendant, which is in the nature of a demurrer to the evidence, 1 RAILROADS: negligence should have been given. Without encumbering the record with a detailed statement of the evidence, it may, after a thorough examination of

it, be summarized as follows, viz : At the crossing where the injuries complained of occurred, the railroad track ran east and west, and the public road north and south. South of the crossing, at a distance of about seventy-six steps, a deep ravine crosses the public road from which the railroad track can be seen two or three hundred yards east of the crossing; the train which did the injury was traveling from east to west. Immediately north of said ravine the public road enters a cut in the bank of the ravine so deep as to prevent a train on the railroad east of the crossing, from being seen until the road emerges from said cut, which it does from twenty to forty feet south of the crossing, when the railroad track east again becomes visible to a person sitting in a wagon for thirty or forty feet. About eleven o'clock on the day of the accident, plaintiff was south of the crossing, driving north on the public road, with a farm wagon and a pair of mules. He testified that when he reached the ravine where he could see the railroad track east he stopped his wagon, looked and listened for a train, and, neither seeing nor hearing it, proceeded on his way and entered the cut, and in passing through it the brake on his wagon made a noise and frightened one of his mules which tried to run up on the bank; that he looked back to see what was the matter with the brake, and while in this position, about one and one-half rods from the crossing, the train came in sight of the mules ; that they threw up their heads and attracted his attention to the train, which was right on him when it came in sight; that the mules became unmanageable, and ran upon the crossing where the collision occurred, resulting in a destruction to the wagon, injury to one of the mules and serious injury to plaintiff, among others causing rupture or hernia. No bell was rung or whistle sounded. Defendant introduced no evidence.

The duty is imposed by section 806, Revised Statutes 1879, on railroad corporations, of ringing a bell at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and

ringing it continuously until its locomotive shall have crossed such road or street, or of sounding a steam whistle at least eighty rods from such road crossing, and also at intervals until such crossing shall be passed. For each failure to perform this duty a penalty of $20 is imposed, to be sued for by the prosecuting or circuit attorney, and the corporation is also made liable for all damages sustained by reason of such neglect. Inasmuch as a railroad company has a right to use and operate its engines and cars on its road; and inasmuch as the public have an equal right to the use and transportation of themselves and property on a traveled public highway crossed by such road, collisions and accidents are likely to occur at such crossings, occasioning damage to the person and property of those having a right to the use of the public road, as well as to the property of railroad companies, and the persons of those who have entrusted themselves to be carried by railroads, the general assembly, in order to prevent such collisions and accidents and resulting consequences, has wisely enacted the above statute requiring railroad companies to sound notes of alarm at least one-fourth of a mile distant from each road crossing, and to keep them up till the crossing is passed, so that the traveler on the highway may receive timely warning of the approach of a train, govern his actions accordingly, and avoid the danger. These statutory signals when given proclaim both to man and beast on the highway the approach of a deadly and destructive instrumentality, and that there is danger in the path they are pursuing; while these signals are appeals to the reason of man to stop on the way till the danger is past, they are appeals to the instincts of animals to avoid it by flight.

While, on the one hand, when these statutory signals are given as required, the persons in charge of and operating the train have a right to presume that their warning voice will be heard and heeded by man and beast on the highway, the traveler on the highway, on the other hand, has a right to rely upon the presumption that a railroad

company will obey the law, and observe and perform the statutory duty of ringing its bell or sounding its whistle, and when such duty is not in fact performed, and the statutory signals of an approaching train are not in fact given, if the traveler on the highway may not rely upon the presumption arising from this omission of duty, that there is no train within a quarter of a mile of the crossing, he, to say the least, might be fully justified as a prudent man in drawing that inference, and, acting upon it, proceed on his way. And even although the statutory signals should be given by a railroad company, if they should be unheard or unheeded, and a traveler undertake to cross, it would still be the duty of those in charge of the train to avoid a collision if the danger was discovered by them in sufficient time to enable them to do so; and, on the other hand, when the statutory signals are not given, if the traveler on the highway, who, by looking along the track of the railroad could discover an approaching train, and thus get the same information by his eye or ear that would be imparted through the ear by the statutory signals when given, fails to look, but rushes heedlessly on to the danger and suffers injury, he would be guilty of such contributory negligence as under our rulings in the cases of *Harlan v. R. R. Co.*, 65 Mo. 22; *Henze v. R. R. Co.*, 71 Mo. 636, and *Purl v. R. R. Co.*, 72 Mo. 168, would prevent a recovery for damages resulting from such injury.

Applying the above principles to the facts of the case in hand, it is manifest that the action of the court in refusing to take the case from the jury and direct a finding for defendant, was entirely proper. It is shown by the uncontradicted evidence that plaintiff stopped, looked and listened for a train, in the ravine crossing the public road, the only point before entering the cut at which a train could be seen, and the most favorable point for hearing one, and neither seeing nor hearing a train, and no signal of an approaching train being in fact given, he entered the cut, and emerging from it within from twenty to forty feet of the

crossing, the train was right upon him, his mules became unmanageable, and the injury occurred. Had not the defendant disobeyed the law and disregarded a duty which it imperatively enjoined, and for the non-performance of which no excuse is receivable, the collision in this case, whereby a strong and robust man, according to the evidence, was injured to the extent of permanent disability, in the performance of his customary labor, would not, in all reasonable human probability, have occurred.

No importance is to be attached to the fact upon which counsel dwells, that while passing through the cut, when plaintiff's mules became frightened at the sudden noise of the brake on his wagon and tried to run up on the bank, that he looked back to ascertain the cause. Had he been looking forward or sideways he could not have seen the train, for the embankment would have obstructed the view of the track in the one case, and the train was not in front of him to be seen in the other.

The objection urged to the first instruction, that as to the question of negligence the jury should have been confined to negligence in not ringing the bell or sounding the whistle, is more technical than substantial, for the reason that there was not a particle of evidence even tending to show either that the bell was rung or the whistle sounded. On the contrary, every witness who testified, and there were quite a number, swore that neither of these things was done, and the court would have been fully justified in assuming in the instruction that the negligence of defendant charged in the petition was established, and in so telling the jury.

The second instruction asked by defendant was properly refused, inasmuch as it allowed the jury to find for defendant if plaintiff did not stop, look and listen for an approaching train in time to prevent the collision, without requiring the jury to go further and find that if by stopping, looking and listening an approaching

train could have been discovered in time to have avoided the collision.

The third instruction was properly refused because it declares as a matter of law that if plaintiff looked back at his brake when one of his mules became frightened at the noise, and did not look at the track until his attention was attracted to it by his team of mules, he was guilty of such contributory negligence as would prevent a recovery, while the evidence clearly shows that plaintiff had stopped, looked and listened for a train at the only point, seventy-six steps from the crossing, where a train could be seen and the most favorable point for hearing the noise of one, and neither seeing nor hearing one, had, by the omission of defendant to perform a statutory duty, been inveigled into the cut, where a train could not have been seen had he looked.

The case seems to have been fairly tried, and we find nothing in the record justifying an interference with the judgment, and it is hereby affirmed. All concur, HOUGH and HENRY, JJ., concurring in the result.