PURL v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

**Negligence in Crossing Railroad Track.** The plaintiff, a deaf man, being about to cross a railroad track, in a buggy, saw the smoke of what he took to be a moving train east of him. He crossed, drove eastward a distance of 250 feet along a road which ran parallel with the railroad and within a few feet of it, turned and drove back the same way he had come, attempting to recross the track at the same place. He never looked to the east to ascertain the direction in which the train was moving, but assumed that it was moving away from him. The view to the east was unobstructed for more than half a mile. When in the act of recrossing the track, he was looking back over his shoulder to the southward. In this position he was struck and injured by the train coming from the east. *Held*, that the accident was the result of his own negligence, and the railroad company was, therefore, not liable. *Held*, also, that his

deafness was no excuse. It should rather have added a spur to his vigilance, and prompted him to employ his other faculties so as to compensate, as far as possible, for the lacking one. *Held*, also, that although plaintiff was in full view of those operating the train for a long distance, yet they were not chargeable with negligence owing to the fact that the road forked just at the crossing, and they could not anticipate that plaintiff intended to take that branch which crossed the track. *Held*, also, that under the circumstances it was immaterial whether the proper signals for the crossing were given or not.

*Appeal from Montgomery Circuit Court.*—HON. G. PORTER, Judge.

REVERSED.

The following diagram shows the crossing and its surroundings.

*Wells H. Blodgett* and *Prosser Ray* for appellant.

*H. W. Johnson* and *E. M. Hughes* for respondent.

SHERWOOD, C. J.—Action for damages for injury done plaintiff and his property while crossing defendant's railroad. In the view we take of this case, it is unnecessary to do more than to determine the point of the sufficiency of the plaintiff's evidence to authorize a recovery; in other words, whether, if the facts thereby established are taken as admitted, and they are to be so taken in consequence of

the demurrer thereto, the plaintiff has made out a *prima facie* cause of action against the defendant. The evidence thus for examination establishes, as we think, and establishes very clearly, that plaintiff has shown no such cause of action. That evidence discloses the customary diversity of opinion as to whether the usual signals were given by the approaching train; some of plaintiff's witnesses testifying to having heard the whistle, and others that they did not. Whether the signals were given or not, we regard as unimportant in the circumstances of this case. The morning of the accident Purl started in his buggy from the north side of the railroad track to take a kettle to Camp's hotel, which was on the south side of and near that track, and distant from the crossing about 250 feet. Before crossing the track, and when near the lumber yard, and going toward the hotel, he saw smoke to the east, seemingly a good way off, which looked like the smoke of a train made by an engine in motion. He proceeded, passed over the crossing, then turned east, following the road which ran parallel with, in full view of and but a few feet from, the railroad track, until he reached the hotel, where delivering the kettle, he turned around immediately and drove west on the same road on his way home. When proceeding to Camp's hotel, he says that as he was facing east, that of course, if there had been a train in sight he would have seen it, but he does not state that he looked. Nor did he pay any further attention to the smoke, which he took to be that of a moving train, although the testimony shows that when in front of Camp's hotel he would have had an unobstructed view of the railroad track to the east of the hotel, for nearly one-fourth of a mile. Nor after starting west to recross the railroad track did he look back east, because he says he "thought the train, the smoke of which I saw when I went over, was going east, and if there was any danger at all, it would come from the west." Nor when he reached the crossing where he was injured, did he look to the east, though an unobstructed view of the track

in that direction could have been had for nearly half a mile, for the reason that he still clung to the assumption that danger was to be apprehended from the west, and not from the east. And the testimony also shows that at the very time he attempted to cross the track, the train was just passing the depot 250 feet east of the crossing, but he neither looked in that direction nor stopped; on the contrary, when he made the turn to make the crossing, one of his witnesses testifies that he was " looking back over his left shoulder;" going north and looking south. " The last time I saw him he was looking back and his horse was on the track." More than that, several of Purl's witnesses, who were in excellent situations to view the whole occurrence, state that when they saw the train approaching, and saw him driving along parallel with the track, they became apprehensive that he would be struck if he attempted to cross, and so watched him until that event happened.

We see nothing in the foregoing testimony to distinguish this case in principle from others heretofore decided by us or to relieve the plaintiff from the consequences of his own folly. *Fletcher v. A. & P. R. R. Co.*, 64 Mo. 484; *Harlan v. St. L. K. C. & N. Ry. Co.*, 64 Mo. 480; *Henze v. St. L., K. C. & N. Ry. Co.* 71 Mo. 636; *Moody v. P. R. R. Co.*, 68 Mo. 472. This case, indeed, exhibits features of recklessness that to some extent are wanting in the cases just cited; for in all those instances the parties injured at least had their faces turned toward the track they were about to cross. The very fact that Purl saw indications of a train moving upon the track, though such train seemed distant, ought of itself to have sounded an alarm in the ear of his caution and kept his faculties on the alert. Instead of that, however, the mute warning of the smoke of a moving train seems to have silenced the promptings of prudence and led him to disregard its most obvious dictates. If, therefore, he has suffered an injury in either person or property, he must be content to abide the result of his own

rashness, a result which could have been averted on his part by the exercise of the very minimum of care.

And the case is not altered, nor does it become more favorable for the plaintiff by reason of his deafness. Such an affliction, so far from excusing one who might have seen the train, should rather add a spur to his vigilance and prompt him to employ his other faculties so as to compensate, as far as possible, for the lacking one. 1 Thompson on Neg., 430, and cases cited; Shearman & Redfield on Neg., § 488.

If it be said that the road on which plaintiff was driving was parallel with and in full view of the railroad track, that, therefore, defendant's servants were lacking in the proper care, or else the accident would not have occurred, the reply is an obvious one, that where the road on which plaintiff was driving makes an abrupt curve to the north to cross the railroad track, it is only some ten or twelve feet from that track; and at that point it also continues west for a short distance and then turns in a southerly course, so that defendant's servants had no cause to suspect, nor were they bound to anticipate that plaintiff intended to cross the track, and especially to do this in front of the train. *Railroad Co. v. Manly*, 58 Ill. 300; Shearman & Redfield on Neg., § 481; 1 Thompson on Neg , 426, *et seq; N. C. R. R. Co. v. State to use of Burns*, 10 Reporter 663. The judgment is reversed, and as it is apparent, from plaintiff's own showing, that he has no standing in court, we shall not remand the cause.    All concur.