POWELL v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1.  **Negligence**: RAILROAD : RATE OF SPEED. Aside from statutory or municipal regulation, no rate of speed at which a railroad train may be run is negligence *per se.*

2.  ———: CONTRIBUTORY NEGLIGENCE: COURT, WHEN BOUND TO INSTRUCT FOR DEFENDANT. In an action grounded upon allegations of negligence, if the undisputed facts show that notwithstanding the defendant's negligence the plaintiff would not have sustained the *injuries* complained of but for his own negligence directly tending to produce them, it is the duty of the court to direct the jury to find for defendant.

3.  ———: CASE ADJUDGED. Judgment for plaintiff reversed because the evidence in the record shows he was not entitled to recover.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

*T. J. Portis* and *S. H. Priest* for appellant.

*Jno. F. Philips* for respondent.

SHERWOOD, C. J.—The plaintiffs bring this action under the Damage Act, because of the death of their son, who was fatally injured by defendant's cars. We rest our decision upon the evidence introduced by the plaintiffs themselves in this cause, waiving all other questions, whatsoever, as being altogether immaterial.

That evidence in substance and in brief declares that the son was a lad between fifteen and sixteen years of age

accustomed to go about the cars; to transact business there with the consent of his father, with whom he had been a great deal on the cars shipping stock, and who had often warned him for three or four years before the occurrence of the accident, of the dangers attendant on proximity to the cars, but who nevertheless permitted him to go about the town of Holden, and the streets and depot, anywhere, regarding him as competent to take care of himself; that the son, in consequence of the facts aforesaid, was acquainted with the arrival and departure of the trains; that on the fatal evening he went down to the train to get newspapers from the express car for Metzeler & Smith, in whose employ he then was by his father's permission; that a train of cars coming from the west, such as that by which the son was killed, could be seen approaching for a mile or more when the track was clear, and that the track had to be clear in order for the train from the west to come in on the main track, its customary one, and the one on which the accident occurred; that the east end of the switch was distant from the street crossing 200 yards or more; that the train in question, No. 4, was heard to approach, the impression of one witness being that it gave the customary signal, or station whistle, which was heard before he saw the train reach the west end of the switch, about a quarter of a mile distant; that the boy was not seen by one witness, who was within a few feet of where the accident occurred, and who watched the approaching train, when he first looked; that he looked in another direction for a very short space of time, standing in between the tracks, and then saw the boy whom he had not seen before, in between the middle and main tracks, a space of nine or ten feet, just at the instant he was struck by No. 4; that whether the boy was in motion could not be told; that the boy was seen by another witness on the street crossing, on the main track, looking toward the south, but a second before he was struck, having been left by his companion only a few moments before, standing in

between the middle and main tracks, a place of perfect safety; that short, sharp danger whistles were heard just before the train causing the injury came in at the street crossing, and that the speed at which the train was running, was variously estimated at from six to eight and ten miles per hour.

Upon these facts thus briefly recited, the defendant asked an instruction to the effect that plaintiffs could not recover. We have no hesitation in saying such an instruction should have been given.

Much has been said about the rate of speed at which the train was run. Aside from statutory or municipal regulation, no rate of speed is negligent *per se*. *Maher v. R. R. Co.*, 64 Mo. 267; *Bell v. R. R. Co.*, 72 Mo. 50; *Wallace v. R. R. Co.*, 74 Mo. 594.

But granting that the rate of speed was somewhat greater than customary, still there is nothing to show it to have been a reckless or wanton rate of speed, or granting so much as that, that there was any necessary connection between such a rate of speed and the injury inflicted. From all that can be gathered from the most liberal inferences from the facts in evidence, the son, in his forgetful and neglectful state, would as surely have been struck by a train moving at four miles an hour, as at the rate plaintiffs' witnesses claim it was moving. Making the broad concession for argument's sake, that the testimony tended to show the defendant was negligent, still, there was nothing to show that this, of necessity, caused the injury. On the contrary thereof, the only inference which can be fairly drawn from the testimony, is that but for the boy's neglect to act in a manner suitable to the situation in which he was placed—suitable to the dangerous machinery by which he was surrounded—that but for his heedlessness, not to say absolute rashness, in failing to look and listen for the train of whose expected arrival he was fully aware, the accident would not have occurred. That he could have seen the train if he had looked; that he could have heard

it if he had listened, is abundantly established, and this case, in this, its most essential feature, resembles *Bell's case, supra*, as well as *Purl's case*, 72 Mo. 168, where views were taken of the evidence similar to those expressed in the present opinion.

And it is the duty of the trial court, the facts being undisputed, facts which show that, conceding defendant's negligence, yet that notwithstanding this the injury would not have occurred but for the contributory negligence of the party injured directly tending to produce that injury, to direct the jury to find for defendant. In a word, negligence and injury as its legitimate consequence, must both concur, or else the defendant will not, on any legal principle, be liable, and so the jury in a proper case should be told. And it is as much the duty and province of the trial court to direct the jury to find a verdict for the defendant, where the undisputed facts show no legal liability to have been incurred, as it is the province of the jury where there is conflicting evidence, evidence tending to establish the demand of the plaintiffs and the defense of the defendant, to return a verdict for either party. This is well settled law, both in this State and elsewhere. *Harris v. Woody*, 9 Mo. 113; *Lee v. David*, 11 Mo. 114; *Alexander v. Harrison*, 38 Mo. 258; *Holman v. R. R. Co.*, 62 Mo. 562; *Callahan v. Warne*, 40 Mo. 131, and cases cited; *Singleton v. R. R. Co.*, 41 Mo. 465; *Bell's case, supra*; *Maher v. R. R. Co.*, 64 Mo. 269; *Harlan v. R. R. Co.*, 64 Mo. 480; *Fletcher v. R. R. Co.*, 64 Mo. 484; *Zimmerman v. R. R. Co.*, 71 Mo. 491; Proffat on Jury Tr., §§ 351, 352, 353, 354, and cases cited; *Railroad Co. v. Houston*, 95 U. S. 697. Such a direction to the jury does not usurp their province as triers of the facts; does not intermeddle with the facts, but simply pronounces the law on the uncontroverted evidence; simply asserts the province and prerogative of the court to declare the inference which the law itself draws from undisputed facts; simply asserts that in point of law the evidence introduced by a party is insufficient to warrant a verdict in

his favor, and, therefore, directs a verdict for the opposite party. *Morgan v. Durfee*, 69 Mo. 469.

In *Callahan's case, supra,* an action for damages for negligence, it was said by Holmes, J.: "The cause of action is founded on the alleged negligence of the defendants, and the very gist of the action is that the negligence of the defendants caused the accident and produced the injury. The burden of proof is on the plaintiff, and if there be no evidence sufficient in law, to make out a *prima facie* case on this issue plaintiff cannot be entitled to recover." And it was there ruled that as no *prima facie* case of liability against the defendants was made out by the plaintiff's evidence, that the court should thus have declared the law to the jury. In *Brown v. European Co.*, 58 Me. 389, Appleton, C. J., said: "It would be absurd to send a cause to a jury when a verdict if rendered in favor of a plaintiff, would not be permitted to stand." In *Pleasants v. Fant*, 22 Wall. 122, the court thus states the rule respecting the point in hand: "If the court is satisfied that conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury." In *Wilds v. R. R. Co.*, 24 N. Y. 433, it is declared that: "Cases of negligence form no exception to the rule. * * No court can be guilty of the absurdity of holding that it would not be competent for the judge who tried the cause, either to non-suit the plaintiff or direct a verdict in his favor, as the case might have required. No legal principle compels him to allow a jury to render a merely idle verdict."

In *Commissioners v. Clark*, 94 U. S. 284, Mr. Justice Clifford speaking for the court said: "Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence.

Powell v. The Missouri Pacific Railway Company.

Decided cases may be found where it is held that, if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury, but the modern decisions have established a more reasonable rule, to-wit :   That before the evidence is left to the jury, there is, or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."   So, also, in another case, where the trial court, by an instruction, had taken the case from the jury and directed a verdict for the defendants, Mr. Justice Swayne, delivering the opinion of the court, said:  "It was proper to give the instruction, if it were clear the plaintiff could not recover.   It would have been idle to proceed further, when such would be the inevitable result.   The practice is a wise one.   It saves time and costs; it gives the certainty of applied science to the results of judicial investigation; it draws clearly the line which separates the provinces of the judge and jury and fixes where it belongs, the responsibility which should be assumed by the courts." *Merchants' Bank v. State Bank*, 10 Wall. 639.

Tested by the light of the authorities cited and quoted, as well as by that of obvious reason, the instruction commented on should have been given.   Therefore, judgment reversed, but cause not remanded, because plaintiffs, on their own showing, have no standing in court.   All concur; NORTON, J., in the result.