Stepp v. The C., R. I. & Pac. Ry. Co.

STEPP v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Negligence:** PROXIMATE CAUSE. Negligence affords no ground for an action unless it is followed by an injury and is its proximate cause.

2. **Railroad:** RATE OF SPEED. While, in the absence of municipal regulations, no rate of speed of a railway train is negligence *per se*, still it does not follow that the railroad may at all times and places run its trains at any rate of speed.

3. ——: ——: EVIDENCE. In an action for the death of a person occurring at a public crossing in the country, and charged to have resulted from the negligence of defendant in managing its train, the rate of speed of the latter is a proper matter to be taken into consideration in determining whether the defendant was guilty of negligence at the crossing, and this, too, is the case irrespective of any rules of defendant relating to the rate of speed at such crossing.

4. **Public Crossings:** RAILROADS: RATE OF SPEED. There must be a reasonable and fair regard on the part of railroads for persons and property in running their trains through villages and over frequented public crossings, and the rate of speed must be made to conform reasonably with the surroundings.

5. ——: ——: DUTY OF TRAVELER. While it is negligence on the part of the railroad not to give the statutory signals at public crossings, it is, also, the duty of the traveler to use all reasonable care and caution to avoid injury.

6. ——: ——: ——. Such traveler has the right to believe the signals will be given, and on the other hand the company has the right to act upon the supposition that he will take all reasonable care to hear them and give heed to their warning.

7. ——: ——: ——. It is the duty of one crossing a railroad track to look and listen for an approaching train and thereby obtain all the information his eyes and ears will afford him, and if he fails to do so and thereby contributes to the injury, he must suffer the consequences, even though the railroad may have been derelict in the performance of its duty in giving the signals.

8. ——: ——: ——. If the crossing is obstructed from view, increased caution is required on the part of the traveler as well as on the part of the railroad, and if from noise, such as a gale of

wind or the rattling of a wagon, hearing is rendered difficult, it then becomes the duty of the traveler to stop and listen.

9. **Negligence :** ONUS-PROBANDI. It devolves on the person alleging the default of the company to make proof of its negligence and that the injury was occasioned in consequence of such negligence, and on the other hand when the fault of the person injured, if any there was, is not disclosed by the plaintiff's evidence and the railroad is shown to have been in default, it then devolves on the latter to show the want of proper care by the person injured, and that by the exercise of proper precautions he would have escaped injury.

10. ——— : ———. Direct evidence of the want of exercise of due care on the part of the person injured is not required to be produced. Surrounding circumstances may afford as conclusive proof as such direct evidence.

*Appeal from Clay Circuit Court.*—HON G. W. DUNN, Judge.

REVERSED.

*M. A. Low* for appellant.

(1) The lower court erred in refusing to strike out the specifications of negligence in the petition, numbered two, three, four, five and six. (2) The court erred in striking out part of defendant's answer. (3) The court erred in admitting the testimony of W. R. Woodward that, under an observance of rule thirty-six, a passenger train going west would lose, in aproaching Minnaville, about two or three minutes. *Telfer v. Railroad*, 30 N. J. L. 188; *Grows v. Railroad*, 67 Maine 100; *Kelly v. Railroad*, 75 Mo. 138; *Moody v. Railroad*, 68 Mo. 470. (4) The seventh instruction asked by defendant should have been given. *McConkey v. Railroad*, 40 Ia. 205; *Wallace v. Railroad*, 74 Mo. 595; *Powell v. Railroad*, 75 Mo. 82. So the eighth instruction as asked by defendant should have been given. *Moody v. Railroad*, 68 Mo. 472. (5) The fifth instruction asked by defendant should have been given. *Maher v. Railroad*, 64 Mo. 267; *Fletcher v. Railroad*, 64 Mo. 484; *Harlan v. Railroad*, 64 Mo. 480; *Moody v. Railroad*, 68 Mo.

470; *Zimmerman v. Railroad,* 71 Mo. 636; *Purl v. Railroad,* 72 Mo. 168; *Kelley v. Railroad,* 75 Mo. 138; *Lenix v. Railroad,* 76 Mo. 86. Defendant's fourth instruction should have been given as asked. *Yarnall v. Railroad,* 75 Mo. 575. (6) The jury should have been instructed to return a verdict for defendant. *Artz v. Railroad,* 34 Ia. 153; Wharton on Negligence, secs. 382 and 384; *Railroad v. Elliott,* 28 Ohio St. 355; *Payne v. Railroad,* 39 Ia. 326; 52 Miss. 808; 75 N. Y. 330; *Sullivan v. Chrysolite, etc., Co.,* 21 Fed. Rep. 829; *Hinckley v. Railroad Co.,* 120 Mass. 257; *T. H. & I. R. Co. v. Clark,* 73 Ind. 168; *Haas v. Railroad,* 47 Mich. 401.

*D. C. Allen* for respondent.

(1) In the absence of proof of the exact facts at the moment of death the law indulges in the presumption that the deceased was in the exercise of due care. *Buesching v. Gas Light Co.,* 73 Mo. 219; *Louisville, etc., Ry. v. Goetz,* 12 Reporter, 50; Sherman & Redfield on Negligence, sec. 44; *Flynn v. Railroad,* 78 Mo. 195. (2) A breach of the science of managing trains by the railway employes is *prima facie* evidence of negligence. *P. W. & B. Railroad v. Derby,* 14 · How. 468. (3) The circuit court committed no error in refusing instructions asked by defendant.

BLACK, J.—Plaintiff's husband was run over and killed on the sixth of September, 1881, by one of defendant's passenger trains at the crossing of a public road at Minnaville in Clay county. She brings this suit to recover $5,000, and bases her right to recover in part upon the failure of the defendant to ring the bell or sound a whistle at the crossing. The train in question was not scheduled to, nor did it stop at, that place. Its regular time was twenty-four minutes past nine o'clock in the afternoon. On this occasion it was half an hour late.

The surroundings were such that a train going west, as this was, would first pass the whole length of a side track, then the depot, and next the crossing in question, which was one hundred and seventy-five feet west from the west end of the platform of the depot.

1.   The petition, among other things, sets up at length in the second, third and fourth specifications of negligence, that the engineer, when approaching the station, neglected to shut off steam so as to enable a brakeman to stop the train without sliding the wheels; that he neglected to direct his eyes to the switch, as soon as in view, and failed to have the train under control so as to be able to stop if the switch proved to be wrong, and that the crossing was a hazardous place, and the train was not under control, so as to prevent running over before stopping.   The fifth specification alleges that the train was running at a rate of speed in excess of one mile in two minutes, and at the rate of forty miles per hour.   The defendant moved to strike out that portion of the petition, including all of these and the sixth specification, which was overruled.

As applicable to these matters the plaintiff read in evidence, against the objections of the defendant, certain rules, which it appears were for the guidance of the defendant's employes.   They are as follows:

"No. 1.   Engineers will shut off steam, when approaching a station, in season to enable a brakeman to stop the train without sliding the wheels.   When approaching a switch they will direct their eyes to it as soon as within view, and have their trains under such command as to be able to stop them, should the switch prove to be wrong."

"No. 2.   The brakes must not be relied upon when approaching railroad crossings or other hazardous points; but steam must be shut off, and the train held under such control, as surely to prevent running over crossings before stopping."

"No. 3.   The maximum rate of speed for the pas-

senger trains is one mile in two minutes, and for all other trains, one mile in four minutes. Faster running is prohibited, except from special order from the superintendent in each case."

"No. 4. Express passenger trains, having the right to pass stations without stopping, will reduce their speed so as to pass carefully the first switch."

The fact that the company was guilty of negligence, followed by an injury, does not make it liable, unless the injury was occasioned by that negligent act. *Harlan v. St. L., K. C. & N. Ry. Co.*, 65 Mo. 22. And such negligence must be the proximate cause of the injury. 1 Rorer on Railroads, 528. There must be a connection between the negligent act and the injury inflicted. *Powell v. The Missouri Pacific Railway Company*, 76 Mo. 80. The first part of the first rule has no application to this train, for it did not, nor did it intend to stop at the station at Minnaville, and the second part of the same rule is equally foreign to anything connected with the injury, and the same may be said of the fourth. The second rule has no application whatever to a public road crossing and by its own plain terms is applicable alone to railroad crossings. As to the third it was not shown, nor was it proposed to be shown that no special order was given by the superintendent to run faster than one mile in two minutes. It may be true the engineer did not have his eyes upon the first switch; that the speed of the train was not so reduced as to pass it carefully, and that if these things had been done there would have been a delay of a few minutes, as is contended, and the deceased would have passed over the track unhurt. But we do not see what direct connection all this has with the injury complained of. If a disobedience of some of these rules at some other station caused the delay of a half hour, that would not lay a foundation for recovery in this case. These rules and the instructions based upon them could have no other effect than to divert the minds of the jurors from the real issue. In-

structions one and two, given at the instance of plaintiff, should have been refused, the rules should have been excluded, and the motion to strike out part of the petition should have been sustained as to the second, third and fourth specifications of negligence.

While in the absence of municipal regulations no rate of speed is negligence *per se* (*Powell v. Railroad,* 76 Mo. 82; *Bell v. Railroad,* 72 Mo. 50; *Wallace v. Railroad,* 74 Mo. 594) still it does not follow that the defendant may at all times and places run its trains at any rate of speed. This was a proper element to be taken into consideration in determining whether the defendant was guilty of negligence at the crossing, and this, too, without regard to the rules of the defendant. There must be a reasonable and fair regard for persons and property in running through villages and over frequented public crossings, and the rate of speed must be made to conform reasonably with the surroundings. *Pryor v. Railroad Co.,* 69 Mo. 215. The defendant's seventh instruction was properly refused.

2. There was evidence tending to show that the train was running at a faster speed than usual; that the bell was not rung nor the whistle sounded; that there were some trees west of the crossing, and for three-fourths of a mile one could not see along the track; that deceased was coming from the west, towards the crossing, and the train was approaching the crossing from the east; there were piles of lumber, wood, a saw mill and the depot, so that the train could not be seen until within a few feet of the crossing; no one saw the plaintiff's husband at the time he was killed; he lived in the neighborhood, and was going home with a team and loaded wagon. There was no direct evidence tending to show that he did or did not listen for a train, or that he stopped his team before attempting to cross the track. Three witnesses heard the train when coming; one who was in a favorable position heard it cross a bridge when a mile

off, another when a quarter of a mile off, and a third did not hear it until it was within thirty yards of the station. It was a still, moonlight night.

Railroad companies cannot operate their roads, and thereby subserve the public interest, without crossing streets and public highways, and positive law gives them a right so to do, but they are required to give the statutory signal. It is negligence not to give the signal. The safety of human lives and of property, on and off the trains, demands the observance of these requirements as well as reasonable precautions in approaching these crossings. On the other hand, the public have a right also to use these highways at such crossings. It is also the duty of a traveler on the public road to use all reasonable care and caution to avoid injury. He has a right to believe these signals will be given, and on the other hand the company has the right to act upon the supposition that he will take all reasonable care to hear them, and give heed to their warning. It has been repeatedly held by this court that it is the duty of one crossing a railroad track to look and listen for an approaching train, and thus get all the information his eyes and ears will afford him, and if he fails to do this and thereby contributes to the injury, he must suffer the consequences, even though the company may have been derelict in the performance of its duty in giving the signals. *Fletcher v. The Atlantic & Pacific Railroad Co.*, 64 Mo. 484; *Harlan v. St. Louis, Kansas City & Northern Railroad Co.*, 64 Mo. 480; *Purl v. The St. Louis, Kansas City & Northern Ry. Co.*, 72 Mo. 168.

If the crossing is obstructed from view increased caution is required on the part of the traveler as well as the company, and if, from noise, such as a gale of wind or the rattling of a wagon, hearing is rendered difficult, then it would become the duty of the traveler to stop and listen. It devolves upon those who allege

the default of the company to make proof of its negligence, and that the injury was occasioned in consequence of such negligence; and on the other hand, when the traveler's fault, if any there was, is not disclosed by his own testimony, and the company is shown to have been in default, it devolves upon the defendant to show the want of proper care on the part of the person injured, and that, by the observance of such precautions, as have been indicated, he could have seen or heard the train. *Johnson v. The Chicago, Rock Island & Pacific Ry. Co.*, 77 Mo. 547. But it is not required that direct evidence of a failure to look and listen, or to stop and listen when there are circumstances calling for such increased care should be produced. The surrounding circumstances are often as conclusive proof as direct evidence. Applying these principles to this case, there was evidence upon which the court was required to submit the cause to the jury, and the demurrer was properly denied.

The defendant's fourth instruction assumes in drawing a conclusion that the deceased failed to look and listen, and for this reason it was properly refused. With this correction, it should be given. It is unnecessary to go through the instructions in detail. Enough has been said to furnish a guide should the evidence be the same on a new trial. The motion to strike out a part of the defendant's answer should have been overruled.

Judgment reversed and cause remanded. Henry, C. J., absent. The other judges concur.