BLUEDORN   v.   THE   MISSOURI   PACIFIC   RAILWAY
COMPANY, *Appellant.*

IN BANC.

1. **Railroad:** POLICE REGULATIONS.   Laws and ordinances regulating the speed of railroad trains are police regulations.

2. ———: ———: CITY ORDINANCES.   The delegation to a municipality of the power to regulate such trains need not be given in express terms, but may be implied from the power of the city to abate nuisances and provide for the general welfare.

3. ———: ———: ———.   City ordinances prohibiting the running of railroad trains within its limits at a greater rate of speed than six miles an hour will not be construed as applying merely to the streets and crossings in the absence of any limitation to that effect in the ordinance.

4. ———: ———: NEGLIGENCE.   An employe of the railroad company injured by reason of the violation of such ordinance, but not participating therein, can maintain an action against the company for the injuries so received.

5. ———: ———: ———.   Nor will such action be defeated because the train was in charge of coemployes of plaintiff, where the former were running the train pursuant to a time-card prepared and promulgated by the company.

6. ———: JOINT NEGLIGENCE OF MASTER AND FELLOW-SERVANT.   One servant may recover for an injury caused by the joint negligence of a master and a fellow-servant.

7. **Contributory Negligence:** PRACTICE.   The trial court will not declare, as a matter of law, one guilty of contributory negligence where the evidence does not make out a clear case of such negligence.

8. **Appellate Practice:** CONFLICTING INSTRUCTIONS.   Giving of conflicting instructions constitutes reversible error.

*Appeal from St. Louis City Circuit Court.*—HON.
D. D. FISHER, Judge.

AFFIRMED.

*H. S. Priest* for appellant.

(1) Respondent's own evidence shows he was guilty of contributory negligence. He knew and must have known from his experience that in so large and busy a yard every track upon which he stepped was likely at any moment to be in use, and that inattention on his part would necessarily meet either with injury to himself, his fellow-servant or the master's property. (2) The speed of the train was not the proximate cause of the plaintiff's injuries. The burden of proving a connection between the cause alleged and the injury rests on the plaintiff. *Jennings v. Railroad*, 99 Mo. 399; *Hanlon v. Railroad*, 104 Mo. 387. (3) Had the respondent the legal right to rely upon the provision of the ordinance limiting the rate of speed to six miles per hour, as he alleges he did, "for his protection in the performance of his duty?" Was it designed to protect him as the servant of the railway in the relation of servant? Did it create a duty upon the master for the benefit of the servant? Did the municipal assembly have in view such a purpose in the enactment? We answer in the negative. Cooley on Torts [2 Ed.] p. 623; *Fath v. Railroad*, 105 Mo. 537; *Merz v. Railroad*, 88 Mo. 676; *State v. Mayor*, 29 N. J. Law, 170; *Eisenburg v. Railroad*, 33 Mo. App. 89; *Toomey v. Railroad*, 24 Pac. Rep. 1074; *Rohback v. Railroad*, 46 Mo. 194.

*Z. J. Mitchell* for respondent.

(1) The plaintiff was not guilty of contributory negligence. It cannot be imputed when the line of sight is obstructed (91 Mo. 57), nor when duty directs and is holding the eyes and mind in another direction. *Stanton v. Railroad; Parsons v. Railroad*, 94 Mo. 286. (2) The ordinances involved in this case

are applicable to servants as well as to masters and citizens at large. *Libby v. Railroad*, 40 Mo. 5 ; *Jennings v. Railroad*, 99 Mo. 395 ; *Weber v. Railroad*, 100 Mo. 201.

BLACK, J.—This is an appeal prosecuted by the defendant from a judgment in favor of plaintiff in a personal damage suit. The plaintiff was injured by a passenger train, while in the employ of the defendant as a night switchman, so that it became necessary to amputate his leg between the knee and ankle. He founds his action on the violation of an ordinance of the city of St. Louis, which limits the rate of speed of trains to six miles per hour.

The plaintiff had been engaged in railroad work for thirteen years, eleven years of that time in the capacity of a conductor on another road entering the city of St. Louis. He had been in the employ of the defendant as night switchman at the defendant's Seventeenth street yards in St. Louis for five nights preceding the night on which he received the injuries of which he complains. The accident occurred at night, between ten and eleven o'clock at a point near the Eighteenth street bridge. The Seventeenth street yards are just east of the Eighteenth street bridge. There is what is called a lead track extending from the Seventeenth street yards westward on a curve to the north under the bridge, and, thence, westward on a curve to the south, but the degree of these curves is not stated. There are three tracks passing under the bridge, the first or south one is this lead track, the next one north of it is called the east-bound main track, and to the north of that is the west-bound main track. Both of these main tracks curve to the south after passing under the bridge going from the east to the west; but here again the degree of the curve is not stated. There is a spur track which leaves the middle or east-bound track at a point just west of the bridge and extends westward between

that track and the lead track. At the time of the accident there were cars standing on the spur track at a point west of but near the bridge.

The plaintiff and his crew were engaged in moving a train of fifteen or more cars from the Seventeenth street yards. After the engine and some six or eight cars passed under the bridge going west the plaintiff got off on the ground and stepped north some six or eight feet to and across the middle or east-bound track to a point some fifteen feet east of the bridge. He then looked west between the cars standing on the spur track and his train, then moving westward, and gave the engineer signals to stop and to back up. He then stepped back towards his train, and as he was clearing the east-bound track his foot was caught by the pilot of the engine of an east-bound passenger train, called the Kirkwood Accommodation. It was necessary for the plaintiff to get off his train and step over the track as he did in order to get in line with his engineer so as to give the signals. He says he could not see the incoming passenger train until it passed around the cars standing on the spur, though some of his evidence tends to show that he could have seen the headlight of the engine drawing that train for a distance of one hundred and eighty feet from where he stood. He says he did not see the incoming train; that he just stepped across the track, gave his engineer a signal with his lantern to stop, then two signals to back up; that he then started back and was caught; and that it was all the work of a minute or thirty seconds. He says he knew this Kirkwood train came in every night, but that he had no time-card and did not know when it was due, and was not the foreman of his crew.

The evidence of the plaintiff and that of another witness is to the effect that this Kirkwood train was moving at a rate of speed from twenty to twenty-two miles per hour. The conductor of that train gave it as his opinion that his train was running at a speed not exceeding ten.

or twelve miles per hour, and assigns as a reason there-for that it was customary to slack up at the point where the accident occurred. He says his train was running on the time given by a time-card prepared and promulgated by the defendant. This time-card was put in evidence, and it calls for a rate of speed exceeding that specified in the ordinance. The ordinance is in these words: "Sec. 1238. It shall not be lawful within the limits of the city of St. Louis for any car, cars or locomotives propelled by steam power, to run at a rate of speed exceeding six miles an hour; but nothing in this section shall be so construed as to apply to any car, cars or locomotives running over track or tracks which are maintained along the river bank between Arsenal street and Elwood street."

The case was submitted to the jury on this evidence produced by the plaintiff; and the first complaint is that the court erred in overruling the defendant's demurrer to the evidence. In this connection the defendant seeks to have the above ordinance ruled out of the case for these alleged reasons: *First*, because the right of the city of St. Louis to regulate the speed of railroad trains is implied from the express power conferred upon it to regulate the use of the streets; hence, the ordinance should be construed as applying to streets and crossings only; *second*, because the ordinance was not designed for the protection of the defendant's employes, and the plaintiff can derive no benefit or protection therefrom.

1. As to the first of these propositions it may be observed that our attention has not been called to any provision of the charter of the city of St. Louis, which gives the city power, in terms, to regulate the speed of railroad trains; but the charter, among other things, gives the mayor and assembly power to regulate the use of streets; to regulate or prevent the carrying on of any business which may be dangerous or detrimental to the public health; to declare, prevent and abate nuisances

on public or private property and the causes thereof ; and to pass all such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures.

It is well to bear in mind that laws and ordinances regulating the speed of railroad trains are police regulations purely.  *Grube v. Railroad*, 98 Mo. 331 ; *Knobloch v. Railroad*, 31 Minn. 402 ; *Railroad v. Deacon*, 63 Ill. 91 ; *Thorpe v. Railroad*, 27 Vt. 140.   As said in the case last cited :  " This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state." ·  Indeed, regulating the speed of railroad trains is one of the many instances of an exercise of the police power given by Chief Justice REDFIELD in that case.   The delegation of such a power to a municipal corporation need not be given in express terms. Says Judge DILLON :   " Resulting from the power over streets, and to protect the safety of citizens and their property, municipal corporations, in the absence of legislative restriction, may control the mode of propelling cars within their limits, may prohibit the use of steam power, and regulate the rate of speed."   2 Dillon on Mun. Corp. [ 4 Ed.] sec. 713.

Speaking of the power of a city to prohibit the propelling of cars by steam through a city Redfield says : " We should entertain no doubt of the right of the municipal authorities of a city or large town to adopt such an ordinance without any special legislative sanction, by virtue of the general supervision which they have over the police of their respective jurisdictions."   2 Red. on Railways [ 5 Ed.] 577–8.   In *Railroad v. Haggerty*, 67 Ill. 113, objection was made to an ordinance limiting the rate of speed of trains within a town to not more than six miles per hour, on the ground that the town had no authority to pass it.   The town had no express authority to regulate the speed of railroad trains, but

the trustees had power to declare what should be considered a nuisance, and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants might require. "Under these powers," says the court, "we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town."

It is, therefore, clear that the argument that the ordinance in question should be construed as applying only to streets and crossings because the power to enact it is implied from the power to regulate the use of streets cannot stand the test of right, reason or authority. It has no foundation upon which to stand; for the power to enact the ordinance does not depend alone, or to any considerable extent, upon the power to regulate the use of the streets. Trains of cars propelled by steam through a city, so as to be dangerous to persons and private property, may well be declared a nuisance. 2 Dill. on Mun. Corp., sec. 713. Add to the nuisance clause the general welfare clause and there is then no doubt but the city of St. Louis had abundant authority to enact this ordinance.

The section of the ordinance now in question and another section thereof were before this court in *Merz v. Railroad*, 88 Mo. 672. That case was well presented, and, after due consideration it was held that the ordinance was a valid enactment, and that it applied to tracks located on uninclosed private property of the defendant. In *Grube v. Railroad, supra*, a like ordinance was held to apply to uninclosed switch yards in the exclusive use of the defendant. It is often said that ordinances requiring a bell to be rung or a flagman stationed at a

crossing are designed for the benefit of persons traveling on the highway, but such ordinances are wholly unlike the one in hand. This ordinance makes no allusion to streets or to public or private grounds. It is an ordinance to limit the rate of speed of cars propelled by steam power within the limits of St. Louis and this, too, without regard to any particular place. The only exception is that made by the ordinance itself. It is no more than a police regulation prescribing the manner in which defendant may use his property and franchise so as not to injure others. The defendant holds its property and franchise subject to all such reasonable police regulations, and in this respect it stands on no other ground than an individual. *Railroad v. McClelland*, 25 Ill. 140 ; Tiedeman, Lim. Police Power, sec. 194. We see no reason to depart from what has been said in prior cases, and we again hold that this ordinance applies to the defendant's switching yards and main track as well as to other places. This conclusion finds direct support in what was said in *Crowley v. Railroad*, 65 Iowa, 658. It was also said in *Whitson v. The City of Franklin*, 34 Ind. 392, a case often cited, that "the fact that the railroad owned the lands over which the train was running constitutes no defense, nor could such fact be considered in mitigation of damages."

We do not regard the case of *State v. Jersey City*, 29 N. J. L. 170, as in conflict with what has been said. That case is made to turn upon the limitations contained in certain statute laws giving the city the power to regulate the speed of railroad cars and engines, and to declare what shall be considered nuisances. No such limitations are found in the charter of the city of St. Louis.

2. The next objection to the ordinance is that it was not designed for the protection of the employes of the defendant, and, hence, they cannot have an action based upon its breach. The claim is that the contract of employment determines the right, obligations and

duties existing between master and servant, and that these rights and obligations cannot be interfered with by an ordinance. In support of this position we are cited to the following extract: "The relation is purely one of contract, and the contract may contemplate or stipulate for any services and any conditions of service not absolutely unlawful." Cooley on Torts [2 Ed.] 623. There is certainly nothing in this extract which would give any validity to an unlawful contract. Says the same author when speaking of the police power of the state: "All contracts and all rights, it is declared, are subject to this power; and not only may regulations which affect them be established by the state, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity." Cooley on Const. Lim. [6 Ed.] p. 708.

A contract between master and servant to disregard and disobey this ordinance would be unlawful and void. It is doubtless true that a servant engaged in disobeying the ordinance could not recover for injuries thus received, for he could not complain of his own wrong. But the plaintiff had nothing whatever to do with the running of this train at the unlawful rate of speed. The ordinance was enacted to protect the lives and property of the citizens, and is the law within the city limits. It furnishes a rule of conduct for master and servant as well as for other persons. It certainly cannot be said that plaintiff, by entering the service of the defendant, ceased to be under the protection of the laws of the city. The plaintiff was not a party to, or a participant in, the violation of the ordinance; and, as the ordinance was enacted to protect the citizens and their property, he has a cause of action for the damages received, unless defeated by his own contributory negligence. It is agreed in this court that another section of the ordinance provides for the arrest and conviction of persons

violating the section before set out, but we do not see what that has to do with the case in hand. The penalty thus imposed can no more affect this case than it would a case where a person not a servant of the company is suing for injuries sustained by reason of the excessive speed.

Nor is the plaintiff's action defeated because he and the persons in charge of the train were fellow-servants; for the train was run at a rate of speed prohibited by the ordinance, pursuant to a time-card prepared and promulgated by the defendant. The unlawful and negligent act was the joint act of the defendant, and of the servants in charge of the train. The law is well settled that one servant may recover for an injury caused by the combined negligence of the master and a fellow-servant. *Young v. Iron Co.*, 103 Mo. 324, and cases cited.

3. The next question is whether the court should, as a matter of law, have declared the plaintiff guilty of contributory negligence. It is to be observed at the outset that the plaintiff was not a trespasser or wrongdoer. At the time of this accident he was where he had a right to be, and where the performance of his duties required him to be, so that the cases of *Yancey v. Railroad*, 93 Mo. 433, and *Barker v. Railroad*, 98 Mo. 50, have no application to this case. Though his work placed him upon these tracks, still it was his duty to be on his guard for approaching trains; and the question is not, whether there is evidence from which the jury might have inferred contributory negligence, but whether the court should have so declared as a matter of law.

It is to be observed in the first place that under our rulings the burden of showing negligence on the part of the plaintiff is upon the defendant. The presumption is that plaintiff performed his duty until the contrary is made to appear. *Stepp v. Railroad*, 85 Mo. 229; *Petty v. Railroad*, 88 Mo. 306; *Schlereth v. Railroad*, 96 Mo.

509.  While some of the plaintiff's evidence is to the effect that he could have seen the approaching train for a distance of sixty yards from where he stood, still his evidence is that he could not see it until it had passed the cars standing on the spur track.  He stepped over one set of rails, and his eyes were then necessarily turned in the direction of his engineer, and while thus looking and giving the signals he could not see the approaching passenger train because of the cars standing on the spur.  Having given the signals to his engineer, he at once stepped back towards his train and was caught. The accident occurred at night, and these movements made by him were all the work of a minute or thirty seconds.

Taking these circumstances in connection with the evidence that the train was running at a speed of from twenty to twenty-two miles per hour, we think the question of contributory negligence was one for the jury.  Where, as here, there is a flagrant violation of a law or municipal regulation, resulting in an injury, contributory negligence should be clearly made out, before the court relieves the defendant from liability on that ground. *Petty v. Railroad, supra.*  The evidence in our opinion does not make out a clear case of contributory negligence.  The demurrer to the evidence was, therefore, properly overruled.

4.  The third instruction given at the request of the defendant is, omitting some unimportant words, as follows:  " If the jury find that plaintiff, while engaged in switching cars upon a freight train in the defendant's yard, stepped immediately in front of a passenger train of defendant, running east upon the east-bound track therein, and was struck thereby, he cannot recover, even though the passenger train was running at a rate of speed exceeding six miles per hour.  " This instruction, it will be seen, does not require the jury to find that plaintiff saw the approaching train, or could

Vol. 108—29

have seen it by the exercise of ordinary care. It submits no question of contributory negligence to the jury. It simply directs a verdict for the defendant if plaintiff stepped immediately in front of the passenger train and was hurt, both of which facts were proved by the plaintiff's own evidence. When this instruction and the one given at the request of the plaintiff are applied to the evidence, as they must be, it is perfectly plain that they are in direct conflict; for, if this instruction given at the request of the defendant presents the law correctly, then the plaintiff had no case, and could not recover. This instruction, in the light of the undisputed evidence of the plaintiff, was simply a demurrer to the evidence submitted to the jury. It is reversible error to give conflicting instructions, no matter at whose instance they are given. Such instructions furnish no guide to the jury. *Stevenson v. Hancock*, 72 Mo. 612.

It is unnecessary to go over all the instructions. Should it appear on a new trial that plaintiff saw the approaching train, and, seeing it, stepped in front of the engine, he cannot recover, for that would be gross negligence on his part; but if he did not see the approaching train then it is for the jury to say whether he was wanting in ordinary care in not seeing it.

The judgment is reversed and the cause remanded. SHERWOOD, C. J., is of the opinion that the judgment should be reversed, but does not agree to remanding the cause. The other judges concur.