JONAS KORNFELD *et al.*, Respondents, v. SUPREME LODGE ORDER OF MUTUAL PROTECTION, Appellant.

St. Louis Court of Appeals, December, 21, 1897.

Benefit Society: SUIT ON BENEFIT CERTIFICATE: SUICIDE: EVIDENCE: DEMURRER. In a suit on a certificate of insurance in a mutual benefit society, where the defense was suicide under a law of the society that should a member, sane or insane, commit suicide within three years after becoming a member, his claim would be null and void,—*Held:* That the defense was an affirmative one under the law of the order, and conclusively proven, and the court erred in refusing to sustain a demurrer to the evidence.

*Appeal from the St. Louis City Circuit Court.*— HON. JOHN A. TALTY, Judge.

REVERSED.

*Andrew Mackay, Jr.*, for appellant.

The court erred in refusing defendant's instruction that plaintiffs having admitted in proofs of death that assured died from suicide, the burden was on

them to show it resulted from accident or natural causes, and not suicide, and erred in giving plaintiffs' instruction as to *onus*.  2 Bac. on Ben. Soc., sec. 471, p. 947; Niblack on Ben. 630; *Ins. Co. v. Newton*, 89 U. S. 32; *Cratty v. Ins. Co.*, 144 *Id.* 626.

The demurrer to the evidence should have been sustained, and the verdict of the jury set aside.  *Merrett v. Mutual Ass'n*, 98 Mich. 338; *Ins. Co. v. Tillman*, 84 Tex. 31; *Brown v. R'y*, 49 Mo. App. 620.

*Wm. B. Thompson* and *F. H. Bacon* for respondents.

Defendent failed to show that Kornfeld intentionally took his own life. *Keels v. Mutual R. F. L. Ass'n*, 29 Fed. Rep. 201; *Leman v. Ins. Co.*, 46 La. Ann. 1189; 15 S. Rep. 388; Bac. on Ben. Soc., sec. 471.

The second instruction asked by defendant was properly refused.  *Bunker v. Hibler*, 49 Mo. App. 536; *McCartney v. Ins. Co.*, 45 *Id.* 373; *Long v. Long*, 44 *Id.* 141.

Suicide being a crime, the presumption is, when circumstantial evidence alone is relied on, or where a body is found dead, that the deceased came to his death by accident or natural causes; and where suicide is relied on as a defense, the *onus* is on defendant, not only to establish the fact, but the intent. *Leman v. Ins. Co., supra; Ins. Co. v. McWhirter*, 73 Fed. Rep. 444, 450; *Ins. Co. v. McConkey*, 127 U. S. 661; *Ins. Co. v. Nithhouse*, 63 N. W. Rep. (Ind.) 1140; *Hale v. Life Indemnity Co., Id.* (Minn.) 1108.

BLAND, P. J.—Frank F. Kornfeld, a young man, at the time of his death was a member of the subordinate lodge of the Order of Mutual Protection, a protective beneficiary corporation, under the laws of the state

of Missouri; he held a benefit certificate issued by the supreme lodge of the order. This certificate was dated February 13, 1893, and provided, among other things, that if, at the time of his death, he had complied with all the laws of the order, regulations and charter of the order, the order would pay to his parents, Jonas Kornfeld and Trasia Kornfeld (plaintiffs herein), one half of one assessment, not to exceed $1,000, upon due notice and satisfactory proof of the death of said Frank F. Kornfeld. Frank F. Kornfeld died on the twenty-first of December, 1893; notice of his death was given and proof thereof made. The proofs stated that Frank F. Kornfeld came to his death by suicide. The executive officers of the supreme lodge refused to pay the benefit certificate, and so notified the plaintiffs and the subordinate lodge of which deceased had been a member. Suit to recover the benefit was then begun by plaintiffs. One of the defenses set up was a plea of a law of the order, which provides that should a member commit suicide, sane or insane, within three years from the time of his becoming a member, his claim shall be null and void, and that Frank F. Kornfeld did commit suicide within the three years.

A trial was had, resulting in a verdict and judgment for the plaintiffs, from which the defendant appealed.

At the close of all the testimony appellant asked the court to instruct the jury that, under the pleadings and evidence, plaintiffs could not recover. This instruction the court refused to give, and this refusal is the ground of one of appellant's assignments of error here, and the only one we shall consider, as our disposition of this one will dispose of the case. The law of the order providing that if death is caused by suicide within three years from the date of the certificate, the certificate shall be null and void, was

Suit on benefit certificate: evidence: demurrer.

offered and read in evidence. The proofs of death signed by both of the plaintiffs stating the cause of death to be suicide, was also read in evidence. Wm. Ebel, a witness for defendant, testified: "I am proprietor of the Budweiser restaurant and was such proprietor in December, 1893; I knew Frank Kornfeld and Henry Elling, who were waiters in the ladies' department of the restaurant; there are two entrances to the restaurant on Sixth street. The entrance is on the west of the street. There is a separate entrance to ladies' department, but you can go from one to the other on inside; the bar is at the northeast corner of restaurant; department for ladies is on south side, which is separated by a glass or bottle partition, which is about eight feet high; there are stalls on south side of ladies' part, with passway in front; the lunch counter is back on west side, at extreme end of room; there is a wash and toilet room at west end of ladies' part, and on south side of lunch counter; you pass from ladies' department into wash and toilet room; as you pass out of lunch room, the door to wash room is to your right; there is an open space in counter for sending out meals, this is on the south side and is about five feet wide; there is also same opening on north side; there is a door leading into wash room with a knob on it; you have to open it and push; you open it from outside; the wash room is about six feet wide and seven feet deep; there is a door leading from the wash room into the water closet, which you open by a knob on inside; the water closet is about four by seven feet in size; the seat in the closet is on west side; there is a partition between the two rooms about seven or eight feet high; the closet is on north side of wash room; there is no window in toilet room; I came into restaurant on evening of shooting, December 21, 1893, at about 11 o'clock; I was at the bar and heard the

shooting in ladies' department. I then ran back to the west, and was not quite back to lunch counter when the second shot was fired; the time between the first and second shot was about two minutes; when second shot was fired I was on north side of lunch counter and about nine feet from entrance; I went on inside of counter, where my wife was, and passed to wash room; the outside door was closed, which I opened; I walked in, opened the door—half way—leading into toilet room, looked in and saw Kornfeld laying against the back of the seat, with his feet and head down; the pistol was on his right side, next to him; he was shot on right side of his head, at the temple; the bullet came out at temple on left side of head; found the bullet mark on both sides of head, but can't say which side it went in on; two policemen came in and carried him off; I saw Elling at the time; said he was shot; saw him in front of the bar; he showed his apron, saw a hole in it."

### CROSS-EXAMINED.

"There is a solid bottle partition running back to entrance of lunch counter and at side; there is a space of about four feet open at back; in order to get to the bar from where the lunch counter is, you have to go around to the end of the partition; I was excited and did not know who was at the bar besides myself at the time first shot was fired; did not see the shot fired, and did not know of my own knowledge who fired it; my wife was on inside of lunch counter; I first went in to the lunch counter, came into the passage way, first opened the door into the wash room and then the other door; you can see from lunch counter a person inside of the partition, there being a space open of five or six feet; you can see east about as far as first room goes—

that is, the tier of rooms; you can see straight out, but not into second room east; I first saw Elling in front of the bar; only ladies go into the wash room; I saw no one in the room when I reached it; a person can stand on seat of water closet and reach up to top of partition; I found Kornfeld's body on seat, against east wall of water closet, he was down in a sitting position, was on his knees—had fallen backwards, with revolver on his right side."

RE-EXAMINED.

"Saw nobody go out of the wash room; you could see the door of this room from open space."

Helen Ebel testified: "I am the wife of Mr. Ebel; I was behind the lunch counter on the evening of the shooting, in Budweiser restaurant; it was about 11 o'clock; I was there in the absence of my husband all the evening; Kornfeld and Elling were the waiters in the ladies' department; there were five rooms in this part; at the lunch counter—the front is open, and on the north and south sides of the counter there is a bottle partition to about three feet of west end, except on south side there is an open space in the bottle department which is about three feet wide, where meal orders are passed through; I went back to dish up oysters and heard a shot in ladies' part; I turned round and saw Frank Kornfeld come along and put the revolver up to his head and pulled it three times; the trigger didn't go; with the third jump he jumped into the ladies' toilet room, then the second shot fell; this shot came from this room; heard the pistol snap two or three times; I was back in the lunch room and saw Kornfeld through the opening for passing out meals; at first he walked slow and then gave two jumps; saw no one go in the

wash room except Kornfeld; I was in full view of the door."

CROSS-EXAMINED.

"Witness was handed a photograph of the central part of restaurant. This represents the interior of the restaurant on December 21, 1893, or room where lunch counter is. When first shot was fired my back was turned so that I had to turn round to see. You can look through the three feet space obliquely from where I stood, and see into the last partitioned room in ladies' part; you can't see the room east of it. Elling came up, ordered oysters, went back towards the front, and I heard the shot. I turned and saw Kornfeld, that is, within two or three seconds. I was then standing back by the table. I heard the pistol distinctly click three times; he put the revolver to his temple. After the chairs and tables began to move, he jumped; after this I heard a shot which I took to be from the inside—from the closet—when he opened the door he was jumping, as if in a hurry; it seemed as if he was trying to get away. Witness was here handed a photograph, and stated this simply shows up the counter. Defendant's counsel objects to this photograph as it does not represent the full space; overruled and defendant excepts." Henry Elling testified: "I was waiter at the Budweiser—413 North Sixth street—on December 21, 1893; knew Frank Kornfeld; had known him two and half years; we were friendly. I carried a revolver and he knew it; I knew he carried one. We went home together at nights. On that day I had my revolver in my overcoat pocket.. I was in restaurant at time I was shot, in ladies' part, in fifth stall, back nearest west end. Mrs. Ebel could see in this stall from the stand. After I gave an order, I looked

around and started up front; as I looked around Korn-
feld had pistol in his hand, put it in his pocket; he
said: 'You will rubber me.' I said: 'If I do I will
acknowledge it,' and I made a jump at him; before I
could reach him he shot me. I was three feet from
him; by 'rubber' he meant to get him out of the
position; he spoke to me about the matter during the
day and evening and before the shooting. I was shot
two inches over the navel; the ball struck a buckle
and glanced off; I fell against the partition; I had on
a white apron. I then ran to the bar. As I did so I
halloed loud to the barkeeper for the closet key, where
we keep our coats; the bar keeper came to me; my
apron was burning and I heard another shot; the out-
cry was made before I heard the second shot; my voice
could be heard back at wash room; I wanted the key
to get my revolver. Kornfeld had no business to go
into the closet; it was a private place for ladies. I
went to closet after the shooting; the body was in the
closet when I opened the door; his feet were there, so
that you could not push it in."

CROSS-EXAMINED.

"The quarrel began about noon time; was renewed
about three or four o'clock; began about noon and
was kept up till about eight o'clock at night; at the
time of shooting I was in the space between the stalls,
this is about three feet wide and runs along north of
the stalls."

August Guenther, being sworn, testified: "I was
barkeeper at Budweiser restaurant on December 21,
1893, and was there that night. I heard the first shot;
the sound came from ladies' department. I then
heard Elling at the top of his voice say: 'Give me my
revolver, if he ain't dead I will kill him.' His apron
was burning, which I pulled off of him. He then

said: 'If he ain't dead I will kill him.' During the time I was there another shot went off; when I first heard him halloo, he was coming out of the door; this was the space of about three minutes before I heard the next shot.''

### CROSS-EXAMINED.

''I did not give Elling the key to the wardrobe; at time second shot was fired, I had hold of him and was examining to see if he was hurt. Everybody was getting out at the time.''

### RE-DIRECT.

''A pistol was here shown to witness. He said it looked like pistol he saw in Kornfeld's possession, self-cocking, hammerless; we three went home together at night and knew that each of us carried a pistol.''

The plaintiffs both testified that they did not know what was in the proofs of loss when they signed them; that they were Germans and could not read English, and that their son Frank in his lifetime was a pleasant, good boy about the house; his two sisters likewise testified he was a good boy. The pistol found by the side of Kornfeld in the water closet, when and where the body was found, was identified, and shown to have two empty chambers when it was picked up; it was identified to be his pistol, and proven that he was in the habit of carrying it. Not a syllable of testimony was introduced to contradict or to impeach any of the evidence of suicide. The evidence is all one way, and leaves no room for any other conclusion, presumption or reasonable hypothesis, than that Frank F. Kornfeld committed suicide by shooting himself in the head with his own pistol, held in his own hand. The defense of suicide under the law of the order, was an affirmative one; it was fully and conclusively proven

and not contradicted by any testimony in the case; the. evidence was all one way, and the court should have given the instruction as asked, and directed the jury to return a verdict for the defendant. *Jackson v. Hardin*, 83 Mo. 175; *Powell v. Railroad*, 76 Mo. 80; *Reichenbach v. Ellerve*, 115 Mo. 588; *Gerrans v. Wenger Mfg. Co.*, 51 Mo. App. 615; *Burger v. R'y*, 52 Mo. App. 119. Judgment reversed. All concur.